FILED
CLERK

4:34 pm, Mar 29, 2017

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
RAY WIDER,

                    Plaintiff,         **MEMORANDUM OF**
                                                   **DECISION & ORDER**
       -against-                    15-cv-2413 (ADS)(AKT)

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

                    Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Center for Disability Advocacy Rights (CEDAR)**
*Attorneys for the Plaintiff*
100 Lafayette Street
Ste. 304
New York, NY 10013
       By:    Christopher James Bowes, Esq., Of Counsel

**United States Attorney's Office for the Eastern District of New York**
*Attorneys for the Defendant*
271 Cadman Plaza East
Brooklyn, NY 11201
       By:    Candace Scott Appleton, Assistant United States Attorney

**SPATT, District Judge**:

On April 28, 2015, the Plaintiff Ray Wider (the "Plaintiff" or the "claimant") commenced this civil action pursuant to the Social Security Act, 42 U.S.C. § 405 *et seq.* (the "Act"), challenging a final determination by the Defendant Acting Commissioner of Social Security Carolyn W. Colvin (the "Defendant" or the "Commissioner"), that he is ineligible to receive Social Security disability insurance benefits.

1

On October 5, 2016, the Court referred the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) to Magistrate Judge A. Kathleen Tomlinson.

Presently before the Court are the Defendant's objections to the February 21, 2017 Report and Recommendation (the "R&R") of Judge Tomlinson. For the following reasons, the Court adopts the R&R in its entirety with the exception of its recommendations regarding the opinions of Nurse Practitioner Donald Payette. Therefore the Court grants in part the Plaintiff's motion for judgment on the pleadings pursuant to Rule 12(c); denies the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c); and remands the case to the Administrative Law Judge for proceedings consistent with this opinion.

## I. BACKGROUND

### A. The R&R

Relevant here, the R&R found that Administrative Law Judge Hilton R. Miller (the "ALJ") failed to identify, or acknowledge the treating physician rule; and failed to apply it to the Plaintiff's two treating sources, Dr. Yvonne Waldemar ("Dr. Waldemar") and Nurse Practitioner Donald Payette ("N.P. Payette"). Because the R&R found that the "ALJ decision [was] infected] with legal error," (R&R at 56), it did not analyze whether the ALJ's decision was supported by substantial evidence. The R&R recommended that the case be remanded back to the ALJ for the proper application of the treating physician rule to the opinions of Dr. Waldemar and N.P. Payette. Based on that, the R&R recommended that the Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) be denied; the Plaintiff's motion for judgment on the pleadings be granted in part; and the case be remanded to the Commissioner for further proceedings consistent with the R&R.

## B. The Defendant's Objections

The Defendant argues that the ALJ did, in fact, identify the treating physician rule; that the ALJ properly applied it; and that the R&R mistakenly conflates treatment notes with medical opinion evidence. The Defendant asks that the Court analyze that portion of the R&R *de novo*, and to find that the ALJ's decision was supported by substantial evidence.

## C. The Plaintiff's Arguments

The Plaintiff did not object to any of the R&R's findings. The Plaintiff argues that the Court should adopt the R&R because it correctly identifies the need for remand so that the ALJ can contact the treating sources about his functional capacities.

## II. DISCUSSION

## A. District Court Review of a Magistrate Judge's R&R

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific," "written," and submitted "[w]ithin 14 days after being served with a copy of the recommended disposition." FED. R. CIV. P. 72(b)(2); *accord* 28 U.S.C. § 636(b)(1)(C). A district court must conduct a *de novo* review of those portions of the R&R or specified proposed findings or recommendations to which timely and proper objections are made. 28 U.S.C. § 636(b)(1)(C); *see* FED. R. CIV. P. 72(b)(3) ("The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."). The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is

apparent from the face of the record. *Lewis v. Zon,* 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008); *Nelson v. Smith,* 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985).

In addition, "[t]o the extent . . . that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the [R&R] strictly for clear error." *IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.,* No. 07–CV–6865, 2008 WL 4810043, at *1 (S.D.N.Y. Oct. 31, 2008); *see also Toth v. N.Y. City Dep't of Educ.*, No. 14CV3776SLTJO, 2017 WL 78483, at *7 (E.D.N.Y. Jan. 9, 2017) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." (quoting *Ortiz v. Barkley,* 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008))). "The goal of the federal statute providing for the assignment of cases to magistrates is to increase the overall efficiency of the federal judiciary." *McCarthy v. Manson,* 554 F. Supp. 1275, 1286 (D. Conn. 1982), *aff'd*, 714 F.2d 234 (2d Cir. 1983) (quoting *Nettles v. Wainwright,* 677 F.2d 404, 410 (Former 5th Cir. 1982) (en banc)) (footnote omitted). "There is no increase in efficiency, and much extra work, when a party attempts to relitigate every argument which it presented to the Magistrate Judge." *Toth*, 2017 WL 78483, at *7 (quoting *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan,* 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

## B. Judicial Review of an ALJ's Decision

"Judicial review of the denial of disability benefits is narrow" and "[t]he Court will set aside the Commissioner's conclusions only if they are not supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Koffsky v. Apfel*, 26 F. Supp. 475, 478 (E.D.N.Y. Nov. 16, 1998) (Spatt, J.) (citing *Bubnis v. Apfel,* 150 F.3d 177, 181 (2d Cir. 1998)).

Thus, "the reviewing court does not decide the case *de novo.*" *Pereira v. Astrue*, 279 F.R.D. 201, 205 (E.D.N.Y. 2010). Rather, "the findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive," *id.*, and therefore, the relevant question is not "whether there is substantial evidence to support the [claimant's] view"; instead, the Court "must decide whether substantial evidence supports *the ALJ's decision.* " *Bonet v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this way, the "substantial evidence" standard is "very deferential" to the Commissioner, and allows courts to reject the ALJ's findings " 'only if a reasonable factfinder would *have to conclude otherwise.*' " *Brault v. SSA*, 683 F.3d 443, 448 (2d Cir. 2012) (quoting *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir. 1994) (emphasis in original)). This deferential standard applies not only to factual determinations, but also to inferences and conclusions drawn from such facts." *Pena v. Barnhart*, No. 01-cv-502, 2002 U.S. Dist. LEXIS 21427, at *20 (S.D.N.Y. Oct. 29, 2002) (citing *Levine v. Gardner*, 360 F.2d 727, 730 (2d Cir. 1966)).

In this context, "[s]ubstantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess*, 537 F.3d at 128 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted)). An ALJ's findings may properly rest on substantial evidence even where he or she fails to "recite every piece of evidence that contributed to the decision, so long as the record 'permits [the Court] to glean the rationale of [his or her] decision.'" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). This remains true "even if contrary evidence exists." *Mackey v. Barnhart*, 306 F. Supp. 337, 340 (E.D.N.Y. 2004) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998), for

the proposition that an ALJ's decision may be affirmed where there is substantial evidence for both sides).

The Court is prohibited from substituting its own judgment for that of the Commissioner, even if it might justifiably have reached a different result upon a *de novo* review. *See Koffsky*, 26 F. Supp. at 478 (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

**C. Applicable Law**

The Act defines the term "disability" to mean an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." *Burgess v. Astrue*, 537 F.3d 117, 119 (2d Cir. 2008) (quoting 42 U.S.C. § 423(d)(1)(A)) (quotation marks omitted). In addition, "[t]he impairment must be of 'such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.' " *Shaw v. Chater,* 221 F.3d 126, 131–32 (2d Cir. 2000) (quoting 42 U.S.C. § 423(d)(2)(A)).

In determining whether a claimant is disabled, the Commissioner is required to apply the five-step sequential process set forth in 20 C.F.R. § 404.1520. *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999). The claimant bears the burden of proving the first four steps, but then the burden shifts to the Commission at the fifth step. *Rosa,* 168 F.3d at 77. First, the Commissioner considers whether the claimant is presently working in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i); *Rosa,* 168 F.3d at 77. If the claimant is not so engaged, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Rosa,* 168 F.3d at 77. If the severity requirement is met, the third inquiry is whether, based solely on medical evidence, the

claimant has an impairment that is listed in Appendix 1 of the regulations, or is equal to a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1; *Rosa,* 168 F.3d at 77. If the claimant has such an impairment, there will be a finding of disability. If not, the fourth inquiry is to determine whether, despite the claimant's severe impairment, the claimant's residual functional capacity allows the claimant to perform his or her past work. 20 C.F.R. § 404.1520(a)(4)(iv); *Rosa,* 168 F.3d at 77. Finally, if a claimant is unable to perform past work, the Commissioner then determines whether there is other work, such as "light work" discussed *infra,* that the claimant could perform, taking into account, *inter alia,* the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Rosa,* 168 F.3d at 77.

**D. The Treating Physician Rule**

"The method by which the Social Security Administration is supposed to weigh medical opinions is set forth at 20 C.F.R. § 404.1527(c) [which has the same analytical framework as 20 C.F.R. § 416.927]." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). Relevant here, "[t]he regulations say that a treating physician's report is generally given more weight than other reports and that a treating physician's opinion will be controlling if it is 'well-supported by medically acceptable [evidence] and is not inconsistent with the other substantial evidence in [the] record.' " *Id.* (quoting 20 C.F.R. § 404.1527(c)(2)).

This rule — the "treating physician rule" — reflects the generally-accepted view that "the continuity of treatment [a treating physician] provides and the doctor/patient relationship he develops place him in a unique position to make a complete and accurate diagnosis of his patient." *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Mongeur*, 722 F.2d at 1039 n.2 (internal quotation marks omitted)); *see Genier v. Astrue*, 298 F. App'x. 105, 108 (2d Cir. 2008)

(noting that the regulations recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment" (quoting 20 C.F.R. § 416.927(d)(2))).

Generally, where the ALJ declines to give controlling weight to a treating physician's opinion, he must provide the claimant with "good reasons" for doing so, and must consider various factors to determine how much weight to give the opinion. *See Blanda v. Astrue*, No. 05-cv-5723, 2008 U.S. Dist. LEXIS 45319, at *18, 2008 WL 2371419 (E.D.N.Y. June 9, 2008); 20 C.F.R. § 404.1527(c)(2). In particular, "to override the opinion of the treating physician, [the Second Circuit] ha[s] held that the ALJ must [] consider, *inter alia*, (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (citing *Burgess*, 537 F.3d at 129).

Where a treating physician's opinion is contradicted by substantial evidence in the record, the opinion will not be afforded controlling weight. *Snell,* 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling."). Additionally, findings that "a claimant is disabled and cannot work . . . are reserved to the Commissioner," and a treating physician's opinion on these points is not afforded controlling weight. *Id.* at 133 (internal citations omitted); *see also* 20 C.F.R. § 404.1527(e)(1). Thus, the ALJ "considers the data that physicians provide but draws [his or her] own conclusions as to whether those data indicate disability ." *Snell,* 177 F.3d at 133.

**E. Application to the Facts**

As an initial matter, the Court finds that the Defendant has made a timely and proper objection. The Defendant argues that the law was misapplied in the R&R. It is not a new

argument, and the Defendant does not seek to rehash old arguments. Therefore the Court reviews *de novo* whether the ALJ correctly applied the treating physician rule to the opinions of Dr. Waldemar and N.P. Payette.

**1. As to whether the ALJ Properly Applied the Treating Physician Rule to the Opinions of N.P. Payette**

The Defendant first argues that the ALJ correctly applied the treating physician rule when he did not assign any weight to the opinions of N.P. Payette because nurse practitioners cannot issue medical opinions under the Commissioner's regulations. The Plaintiff does not address this objection, but instead focuses his arguments on whether the ALJ has to contact the Plaintiff's treating sources. The Court agrees with the Defendant because the statutes and case law are clear that nurse practitioners cannot issue medical opinions.

Under 20 C.F.R. § 416.927 ALJs are required to weigh and evaluate "every medical opinion." Controlling weight can be given to "a treating source's medical opinion on the issue(s) of the nature and severity" of the claimant's impairments if the medical opinion is "well supported by . . . other substantial evidence . . . ." 20 C.F.R. § 416.927(c)(2).

"Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.902.

Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

20 C.F.R. § 416.913(a) lists the "acceptable medical sources" . . . "who can provide evidence to establish an impairment." Neither nurses nor nurse practitioners are listed in 20 C.F.R.

9

§ 416.913(a). Nurse practitioners are listed in a subsection of paragraph (d), which states that "[i]n addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work . . . ." 20 C.F.R. § 416.913(d); *see also* 20 C.F.R. § 416.902 ("Acceptable medical source refers to one of the sources described in § 416.913(a) who provides evidence about your impairments. It includes treating sources, nontreating sources, and nonexamining sources.").

Therefore, since nurse practitioners are not listed as "acceptable medical sources," they cannot be "treating sources," and cannot even give "medical opinions." ALJs only have to evaluate and weigh "medical opinions." 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive."); *see also Taylor v. Colvin*, No. 3:14-CV-0928 (GTS), 2016 WL 1049000, at *5 (N.D.N.Y. Mar. 11, 2016) ("[A]n opinion from a nurse practitioner is not a medical opinion that is entitled to any particular weight under the regulations."); *Millard v. Comm'r of Soc. Sec.*, No. 5:13-CV-00261, 2014 WL 6485807, at *6 (D. Vt. Nov. 19, 2014) (same); *Gallup v. Comm'r of Soc. Sec.*, No. 6:11-CV-1345 NAM, 2014 WL 2480175, at *6 (N.D.N.Y. June 3, 2014) ("[A]s a nurse practitioner, she was not an 'accepted medical source' . . . .").

Therefore, the ALJ was not required to give N.P. Payette's opinion *any* weight, and the Plaintiff's argument that the ALJ should have identified how much weight to give to the N.P. does not withstand scrutiny. Accordingly, the Court does not adopt that portion of the R&R; and the portion of the Plaintiff's motion asking the Court to remand the case for the ALJ to apply the treating physician rule to N.P. Payette's opinions is denied.

## 2. As to whether the ALJ Properly Applied the Treating Physician Rule to the Opinions of Dr. Waldemar

The Defendant's second argument is that Dr. Waldemar's statements were merely treatment notes, not a "medical opinion." The Plaintiff again does not address this argument, but directs his energies instead to arguing that the ALJ has to contact Dr. Waldemar to obtain a source statement concerning the Plaintiff's functional limitations. Although the Court believes that it is a difficult question, the Court finds that Dr. Waldemar's statements constitute medical opinions under the Act. However, the Court finds that the ALJ does not need to contact Dr. Waldemar to obtain a statement regarding his limitations and residual functional capacity ("RFC").

As stated above, medical opinions are "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Dr. Waldemar, a licensed medical physician is an acceptable medical source. *See* 20 C.F.R. § 416.913(a)(1) (listing licensed medical physicians as acceptable medical sources).

Effective March 27, 2017, 20 C.F.R. § 416.913 was amended to give further guidance on the difference between medical opinions and other statements from physicians. It states that "[o]ther medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* at § 416.913(3). However, the statute goes on to say "[f]or claims filed (see § 416.325) before March 27, 2017, 'other medical evidence' does not include a diagnosis, prognosis, or a statement that reflects a judgment(s) about the nature and severity of your impairment(s))." *Id.* (internal quotation marks added). In Section 416.913, which is titled "Categories of evidence," there are

11

five categories of evidence: objective medical evidence, *id.* at (a)(1) ("medical signs, laboratory findings, or both"); medical opinion, defined above; other medical evidence; evidence from nonmedical sources; and prior administrative medical findings.

Therefore, since diagnoses, prognoses, and statements about the severity and nature of impairments do not fit into the four categories of "other medical evidence," objective medical evidence, evidence from a nonmedical sources, or a prior administrative findings, they are medical opinions. As this claim was filed before March 27, 2017, any diagnoses, prognoses, and statements about the severity and nature of impairments would accordingly be medical opinions. The earlier version of Section 416.913, effective from September 3, 2013 to March 26, 2017, does not provide any such guidance. However, the amended version of 20 C.F.R. 416.913, appears to conform with the version of 20 C.F.R. § 416.927 discussed above, also effective before March 27, 2017, because both either explicitly state or imply that diagnoses, prognoses and statements about a claimant's impairments constitute medical opinions.

The Second Circuit has not given explicit guidance on the precise difference between treatment notes and medical opinions. However, it is clear from the case law that they are two separate categories because the Second Circuit has often held that ALJs can disagree with doctors' medical opinions when they differ from treatment notes. *See, e.g., Monroe v. Comm'r of Soc. Sec.*, No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017) (summary order) (holding that a court can give less weight to a treating source's medical opinion where the treatment notes contradict the opinion); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (summary order) (holding that the treatment notes of other doctors can be relied upon to override the medical opinion of a treating physician); *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order) (holding that ALJ did not err in failing to obtain a formal medical opinion from

12

the Plaintiff's treating psychiatrist where the ALJ relied on that doctor's treatment notes); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (summary order) (holding that the ALJ was not required to give controlling weight to treating physician's medical opinion where the treatment notes contradicted that opinion); *Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (summary order) (holding that ALJ did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians); *Bliss v. Comm'r of Soc. Sec.*, 406 F. App'x 541, 542 (2d Cir. 2011) (summary order) (holding that the ALJ did not need to notify the treating psychiatrist of inconsistencies between the psychiatrist's report and treatment notes).

Here, Dr. Waldemar gave opinions regarding the Plaintiff's impulse control, insight judgment, attention, memory, mood, and his ability to carry out daily responsibilities. Dr. Waldemar diagnosed the Plaintiff with schizoaffective disorder, insomnia related to another mental disorder, personality disorder and alcohol/cocaine dependence. Dr. Waldemar prescribed several drugs to the Plaintiff for his psychological issues.

Dr. Waldemar's notes explicitly include diagnoses and, arguably, statements reflecting judgments about the nature and severity of the Plaintiff's impairment. Therefore, the Court finds that Dr. Waldemar's notes were medical opinions under the definition of the Act before it was amended. In the Court's view, Dr. Waldemar's notes were more than mere treatment notes—they did not merely list the symptoms detailed by the Plaintiff and/or the tests performed by the doctor. See, e.g., *Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) (holding that a doctor's recording of the plaintiff's own reports of pain were mere treatment notes); *Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) (a treatment note that simply documented the patient's complaints and prescribed treatments was not a medical opinion); *Mapson v. Colvin*, No. 14-CV-1257 SRN/BRT,

2015 WL 5313498, at *30 (D. Minn. Sept. 11, 2015) ("However, these statements, and others noted in [the treating physician]'s treatment notes, merely document the Plaintiff's complaints, appearance, and the medications prescribed to her."); *cf. Winschel v. Comm'r*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("The Commissioner argues that the ALJ was not required to consider the treating physician's treatment notes because they did not constitute a 'medical opinion,' but this argument ignores the language of the regulations."); *Kaighn v. Colvin*, 13 F. Supp. 3d 1161, 1165 (D. Colo. 2014) (holding that notes from a doctor who managed the Plaintiff's psychiatric medications and diagnosed the Plaintiff with several psychiatric disorders were medical opinions that the ALJ had to consider and determine what weight to assign to them). Dr. Waldemar's notes instead made judgments on the Plaintiff's level of impulse control, insight, attention, and memory—and therefore the severity of his conditions; and diagnosed the Plaintiff.

Therefore, the Court finds that the ALJ erred in not assigning any weight to Dr. Waldemar's opinions. Under 20 C.F.R. § 416.927 ALJs are required to weigh and evaluate "every medical opinion." "Under the applicable regulations, the Social Security Administration is required to explain the weight it gives to the opinions of a treating physician." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.")). Furthermore, the ALJ should have afforded controlling weight to Dr. Waldemar's opinions, because Dr. Waldemar was the Plaintiff's treating physician. The ALJ' opinion referred to Dr. Waldemar, though not by name, as "his [referring to the Plaintiff's] doctor . . . ." (R. at 25). It was therefore error for the ALJ to not assign any weight to Dr. Waldemar's opinions; and it was further error to not assign controlling weight to those opinions.

However, the Court does not believe that the ALJ needs to acquire a complete medical opinion on the Plaintiff's limitations and residual functional capacity from Dr. Waldemar because the ALJ had a complete medical record, including all of Dr. Waldemar's notes. *See Swiantek*, 588 F. App'x at 84 (holding that the ALJ did not need to acquire a medical opinion on the plaintiff's limitations where the ALJ had complete a medical record); *Sanchez v. Colvin*, No. 13 CIV. 6303 PAE, 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015) ("[T]he Second Circuit has held that it is not *per se* error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." (citing *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) ("[W]e hold that it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity.")); *Pellam*, 508 F. App'x at 90 (holding that ALJ did not need to acquire a medical source statement from the treating physician when the ALJ had all of the treatment notes from the Plaintiff's treating physicians).

The Court also finds that the Plaintiff misunderstands the recommendations of the R&R. It states that "*if* the ALJ believed that the opinions of Plaintiff's treating sources . . . were incomplete or otherwise ambiguous, he had an affirmative obligation to contact these sources in order to obtain clarification which would assist in his RFC determination and permit him to comply with the dictates of the treating physician rule." (R&R at 51) (emphasis added). The R&R does not hold that the opinions were incomplete or ambiguous; nor does it recommend remand for the ALJ to obtain clarification from the treating sources, but rather for the purpose of applying the treating physician rule. The R&R includes similar case law to that discussed above which states that medical source statements do not need to include a function by function analysis or every physical limitation. More importantly, as the case law above holds, ALJs do not need to acquire

medical opinions when they have complete medical records. That is the case here. Therefore, the ALJ is not required on remand to obtain a function by function analysis from Dr. Waldemar, or an opinion from him regarding the Plaintiff's RFC.

Nevertheless, since the ALJ failed to assign *any* weight to Dr. Waldemar's opinion, the Court is compelled to remand the case. "Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell*, 177 F.3d at 133 (quoting *Schaal v. Apfel,* 134 F.3d 496, 505 (2d Cir. 1998) (internal quotation marks omitted)). As the R&R stated, "the [ALJ's] opinion is devoid of any statement or discussion concerning the overall weight, if any, which was given to th[is] treating source[]." (R&R at 52). The Commissioner's guidelines are clear that the ALJ must afford some weight to all medical opinions; and must either give controlling weight to the medical opinion or a treating source; or good reasons for not affording it controlling weight. 20 C.F.R. § 416.927. Failure to do so is cause for remand. *Schaal*, 134 F.3d at 504. "[O]n this record, we cannot say with certainty what weight should be assigned . . . to the opinion of plaintiff's treating physician, or whether further clarification of the record with these regulations in mind might alter the weighing of the evidence." *Id.*

Therefore, the Court finds that the ALJ committed legal error by failing to ascribe any weight to Dr. Waldemar's medical opinions. The Court is unable to address whether or not the ALJ's opinion is supported by substantial evidence because the ALJ committed legal error that requires remand. "[A] district court may not assess objections as to 'substantial evidence' where an ALJ decision is infected with legal error." *Stango v. Colvin*, No. 3:14-CV-01007 (CSH), 2016 WL 3369612, at *16 (D. Conn. June 17, 2016) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999); *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

16

Accordingly, the Court remands the case to the ALJ so that the ALJ can address, with specificity, the treating records and medical opinions of Dr. Waldemar and either 1) ascribe controlling weight to them or 2) provide good reasons for the weight they are to be accorded. *See Halloran*, 362 F.3d at 32–33.

### III. CONCLUSION

As the Defendant's only objections pertained to Section V-A-3 of the R&R, the Court reviews the rest of the R&R for clear error. *Lewis,* 573 F. Supp. 2d at 811; *Nelson,* 618 F. Supp. at 1189. The Court finds no clear error. Furthermore, after a *de novo* review, the Court agrees with the reasoning and result of Section V-A-3, except for that portion which recommends remand for application of the treating physician rule to N.P. Payette. Therefore, the Court adopts the R&R in its entirety with the exception of the discussion of N.P. Payette. As discussed above, N.P. Payette was unable to give a medical opinion, and on remand the ALJ need not ascribe any weight to her opinions.

Accordingly, the Plaintiff's motion for a judgment on the pleadings pursuant to Rule 12(c) is granted in part; and the Commissioner's motion for a judgment on the pleadings pursuant to Rule 12(c) is denied. The case is remanded for further proceedings consistent with this opinion.

The Clerk of the Court is respectfully directed to close this case.

It is **SO ORDERED:**

Dated: Central Islip, New York

March 29, 2017            __/s/ Arthur D. Spatt__

ARTHUR D. SPATT

United States District Judge